Matter of Pathology Assoc. of Ithaca, P.C. (Plocharczyk--Sudilovsky) (2023 NY Slip Op 01336)

Matter of Pathology Assoc. of Ithaca, P.C. (Plocharczyk--Sudilovsky)

2023 NY Slip Op 01336

Decided on March 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 16, 2023

534471 
[*1]In the Matter of the Dissolution of Pathology Associates of Ithaca, P.C. Elizabeth Plocharczyk, Respondent; Daniel Sudilovsky, Appellant.

Calendar Date:January 10, 2023 

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Fisher, JJ. 

Woods Oviatt Gilman LLP, Rochester (Andrew J. Ryan of counsel), for appellant.
Hancock Estabrook, LLP, Syracuse (Janet D. Callahan of counsel), for respondent.

Lynch, J.
Appeal from an order of the Supreme Court (Joseph A. McBride, J.), entered December 7, 2021 in Tompkins County, which granted petitioner's application, in a proceeding pursuant to Business Corporation Law article 11, to direct the judicial dissolution of Pathology Associates of Ithaca, P.C.
Petitioner and respondent are pathologists who each hold a 50% share in Pathology Associates of Ithaca, P.C. (hereinafter PAI), a professional corporation providing anatomic and clinical pathology services to healthcare providers. Respondent began working for PAI in 2005 and was its sole shareholder between 2007 and 2018. Petitioner joined PAI in 2013 and became an equal shareholder in 2018. By letter dated January 14, 2021, petitioner offered to purchase all of respondent's shares in PAI, claiming that, "[i]n light of [respondent's] behavior and practices over the past year, [his] membership in [PAI] [was] no longer viable." The offer included a proposal under which respondent would cease employment with PAI effective February 1, 2021 with continued receipt of his salary, bonus and benefits up to June 1, 2021. When no agreement could be reached, petitioner commenced the instant proceeding seeking judicial dissolution of PAI pursuant to Business Corporation Law § 1104, claiming that "significant division, differences of opinion, and dissension" had arisen between her and respondent such that dissolution of the corporation was the only viable option.[FN1] Respondent opposed dissolution. Following a hearing, Supreme Court granted the petition, finding that there was "internal dissension and two or more factions of shareholders [we]re so divided that dissolution would be beneficial to the shareholders" (Business Corporation Law § 1104 [a] [3]). Respondent appeals.
We affirm. A corporation may be judicially dissolved pursuant to Business Corporation Law § 1104 (a) (3) when "there is internal dissension and two or more factions of shareholders are so divided that dissolution would be beneficial to the shareholders" (see Matter of Clever Innovations, Inc. [Dooley], 94 AD3d 1174, 1175 [3d Dept 2012]). Dissolution on this ground is appropriate when "[t]he evidence before the court demonstrate[s] that the dissension between the two shareholders 'pose[s] an irreconcilable barrier to the continued functioning and prosperity of the corporation' " (Matter of ANO, Inc. v Goldberg, 167 AD3d 731, 732 [2d Dept 2018], quoting Matter of Kaufmann, 225 AD2d 775, 775 [2d Dept 1996]). The relevant issue is not the
" 'underlying reason for the dissension . . . [but] the fact that dissension exists and has resulted in a deadlock precluding the successful and profitable conduct of the corporation's affairs' " (Matter of ANO, Inc. v Goldberg, 167 AD3d at 732, quoting Matter of Goodman v Lovett, 200 AD2d 670, 670-671 [2d Dept 1994], lv dismissed 84 NY2d 850 [1994]). "The determination whether a corporation should be dissolved is within the discretion of the [trial] court" (Matter of Cellino [*2]v Cellino & Barnes, P.C., 175 AD3d 1120, 1121 [4th Dept 2019]; see Business Corporation Law § 1111 [a]).
Pursuant to the parties' shareholder agreement, effective as of June 1, 2018, petitioner and respondent were equal shareholders, jointly responsible for management of the business. At that time, PAI had a contract with Cayuga Medical Center (hereinafter CMC) — a community-based hospital — to provide pathology services to its patients.[FN2] The contract with CMC represented approximately 80% of PAI's revenue and respondent was the medical director of CMC's laboratory. Petitioner and respondent portray markedly different accounts of what occurred after their shareholder agreement went into effect. Petitioner claims that, although she and respondent initially worked well together, she noticed a change in respondent's behavior in or around September 2019 when he was going through a divorce. Petitioner maintained that, by the time she commenced the instant proceeding, their working relationship had deteriorated to such an extent that continuation of the business was no longer viable.
In support of such claim, petitioner cited several disagreements between the parties regarding fundamental practice decisions, including with respect to CMC's COVID-19 response. From petitioner's perspective, respondent failed to cooperate with her efforts to bring COVID-19 testing in-house at CMC using a pooled testing method to expand the hospital's testing capacity. She further recounted that respondent was uncooperative in her efforts to enable a collaborative COVID-19 testing relationship with Cornell University, which included the use of Cornell's veterinary lab. Petitioner also claimed that respondent had "dismantled a lot of the work" done on CMC's benign breast program, resulting in the program ceasing to operate for several months, and failed to satisfy the attendance requirements necessary for the pathology department to participate on CMC's cancer committee, thereby jeopardizing the program's accreditation. Petitioner testified that respondent "refus[ed]" to contact her to attend the committee meetings in his absence. Respondent, for his part, denied that that the parties' working relationship had deteriorated to such an extent that dissolution of PAI was beneficial to the shareholders. He maintained that they had a functional relationship and that there was never an instance in which they were truly deadlocked regarding the operation of the business. In that respect, respondent highlighted that there were plausible medical reasons for the positions he took on these programs, noting that he eventually signed off on using the pooled testing approach and that the collaboration with Cornell went forward as intended.
As a consequence of these and other ongoing disputes, petitioner maintained that by October 1, 2020, when respondent was removed as medical director at CMC, the parties were no longer communicating with each other. For his part, respondent explained [*3]that, as of that date, petitioner "would not talk to [him] [but he] was open to talking with her." He maintained that business issues "were not, [he] didn't think, confrontational in any way, and they were resolved." In contrast, he acknowledged that, "[a]s far as medical communication, [petitioner] did reject interacting with [him]." Relevant to that point, petitioner had already testified that, from her perspective, the practice of pathology could not be done without a collaborative relationship.
In contrast to respondent's testimony that the parties never had a business disagreement that could not be resolved, Martin Stallone — CMC's chief executive officer — actually corroborated petitioner's position, testifying that he was "keenly aware . . . [of] increased conflict" between the parties by 2020. In Stallone's estimation, the inability of petitioner and respondent to get along had an adverse effect on the hospital and its staff. By June 2020, Stallone made the decision that the medical directorship of CMC's laboratory needed to change, proposing a plan where each party would hold the position in three year increments commencing in 2021. However, it subsequently became clear to Stallone that the parties' inability to get along rendered this plan unfeasible and he accelerated the timeframe for petitioner to take over as medical director to October 2020. Stallone continued to observe conflict even after this event, including a "cessation of all meaningful communication between the members of PAI around clinical issues," which posed the potential for "quality concerns and operational concerns."
On this record, Supreme Court properly granted the petition for judicial dissolution. It must be emphasized that there were no other directors/shareholders or employees of PAI. "In a close corporation like [PAI], 'the relationship between the shareholders is akin to that of partners and when the relationship begins to deteriorate, the ensuing deadlock and dissension can effectively destroy the orderly functioning of the corporation' " (Matter of Cellino v Cellino & Barnes, P.C., 175 AD3d at 1122, quoting Greer v Greer, 124 AD2d 707, 708 [2d Dept 1986], appeal dismissed 69 NY2d 947 [1987]). Supreme Court could readily and reasonably conclude that this is precisely what occurred. Although PAI was, by all accounts, continuing to operate at a profit when this litigation was commenced, "dissolution is not to be denied in a proceeding brought pursuant to Business Corporation Law § 1104 simply because the corporate business has been conducted at a profit or because the dissension has not yet had an appreciable impact on the profitability of the corporation" (Matter of Cellino v Cellino & Barnes, P.C., 175 AD3d at 1122 [internal citation omitted]; see Business Corporation Law § 1111 [a] [3]). The record makes abundantly clear that the deterioration in the parties' relationship and their inability to agree on fundamental practice decisions had a negative impact [*4]on PAI's contract with CMC — the corporation's biggest and most profitable client. Stallone confirmed through his own observations that there had been a breakdown in the parties' ability to effectively work together, emphasizing that the discord was having an adverse impact on the hospital and its staff. In these circumstances, dissolution of PAI was warranted (see Molod v Berkowitz, 233 AD2d 149, 149 [1st Dept 1996], lv dismissed 89 NY2d 1029 [1997]; Matter of Goodman v Lovett, 200 AD2d at 671; Matter of Sternberg [Osman], 181 AD2d 897, 898 [2d Dept 1992], lv dismissed 80 NY2d 892 [1992]; Greer v Greer, 124 AD2d at 708; compare Matter of Fazio Realty Corp., 10 AD3d 363, 365 [2d Dept 2004]). We reach this conclusion without regard to any hearsay testimony that may have been improperly received into evidence, particularly with respect to Cornell's purported views about respondent. Respondent's arguments directed at the cause of action seeking common-law dissolution are of no moment, as petitioner did not pursue this claim and Supreme Court did not base its determination on such cause of action.
Garry, P.J., Aarons, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The petition also set forth a cause of action for common-law dissolution.

Footnote 2: Following commencement of this proceeding, CMC terminated its contract with PAI and entered into a contract with a new entity that petitioner incorporated to provide pathology services to the hospital.